IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 5:21cv00073 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| SHENANDOAH UNIVERSITY, | ) | By:   Hon. Thomas T. Cullen |
| | ) |           United States District Judge |
| Defendant. | ) | |

When Plaintiff John Doe, formerly a student in the Physician Assistant Studies Program ("PA Program") at Defendant Shenandoah University ("the University"), informed the faculty that he had been diagnosed with Social Anxiety Disorder ("SAD") and requested accommodations, he expected to receive them. Instead, he claims that University officials targeted him because of that diagnosis and his race. Doe further contends that these unlawful actions culminated in his expulsion and harm to his professional reputation. After his dismissal from the University, Doe brought this suit, asserting claims of discrimination and defamation. The University has moved to dismiss Doe's two defamation claims. Because Doe has adequately alleged the necessary elements of his defamation claims, the court will deny the University's motion.

I.

Plaintiff John Doe is African American; he was born in Nigeria and emigrated to the United States before becoming a permanent resident. (Compl. ¶ 7 [ECF No. 1-2].) After attending graduate school and working as an epidemiologist, he enrolled in Shenandoah University's PA Program in July 2018. (*Id.* ¶¶ 8–9.) Although not directly relevant to the

present motion, Doe alleges a course of conduct by the University and its agents to force him out of the PA Program once he disclosed that he had been diagnosed with SAD and requested appropriate accommodations.

According to Doe, the University made four separate attempts to dismiss him from its PA Program (*see id.* ¶¶ 27, 46, 58, 80).[1] Once it finally did so, Doe claims the University and its agents "began to post-hoc justify its dismissal of Doe on 'patient safety' grounds." (*Id.* ¶ 83.) The final rationale the University gave for Doe's dismissal from the PA program was his alleged failure to pass an Objective Structured Clinical Exam ("OSCE"). "The OSCE is a time-limited practical exam conducted at the end of certain semesters in the PA program and consists of a set of predefined stations related to patient care." (*Id.* ¶ 60.) The University told Doe that he failed at least one segment of the OSCE twice, and Doe appealed. (*Id.* ¶ 61, 62, 70.) At his third retake, Doe alleges that the University failed to provide him the accommodations he had previously requested (and apparently been granted) for his SAD. (*See id.* ¶¶ 24, 77.) Following his alleged failure on the retake, Doe was dismissed the fourth, and final, time.

During his appeal of his dismissal, Doe claims that Dean Karen Abraham—the Dean of the School of Health Professions at the University—stated that she denied his appeal because "'[r]eading for accuracy in a clinical environment is required for patient safety.'" (*Id.* ¶ 83 (alteration original).) Doe alleges that this statement was defamatory, implied that he was a danger to patients, and that Dean Abraham published this statement to "other [University]

---

[1] Because the extensive factual allegations regarding Doe's schooling and the various iterations of his attempted dismissal do not directly inform the Counts challenged in the University's motion to dismiss, they are omitted here.

employees, including Adrienne Bloss, who was [the University's] Provost at the time . . . ." (*Id.* ¶¶ 84–86.)

Doe appealed Dean Abraham's decision to Provost Adrienne Bloss, who ultimately upheld the determination, writing: "While I applaud the significant improvement you have made in your didactic courses, *I cannot overlook the ongoing concerns regarding safety and critical decision making that were raised in your final OSCE attempt.*" (*Id.* ¶ 86 (emphasis added).) She further stated that the PA Program "maintains a necessarily high standard for sending students into their clinical year, and I must uphold that standard. Accordingly, your dismissal from the program will stand." (*Id.*) Like Dean Abraham's statement, Doe contends Provost Bloss's statement—which was similarly disseminated to other University employees—"conveyed the implication and insinuation that Doe posed a danger to patients and was, thus, unfit for a career as a PA or in any healthcare setting." (*Id.* ¶ 87.)

At the final stage of his appeal, University President Tracy Fitzsimmons reviewed Doe's file. Fitzsimmons, like those before her, denied Doe's appeal. (*Id.* ¶ 90.) She wrote that "Doe's dismissal was due *solely* to concerns for patient safety." (*Id.* (emphasis original) (internal quotation marks omitted).) Doe alleges that these comments were also forwarded to "one or more [University] employees, including [the University's] registrar, similarly causing the correspondence to be published in Doe's permanent academic file." (*Id.* ¶ 91.) No further appeal was available, and Doe's dismissal from the PA program became final.

In November 2021, Doe brought suit against the University, asserting a claim of race discrimination under Title VII of the Civil Rights Act (Count I), a violation of the American with Disabilities Act (Count II), a violation of the Rehabilitation Act (Count III), defamation

(Count IV), and defamation *per se* (Count V). The University moved to dismiss the defamation counts (IV and V), arguing that the statements in question were never published, that the statements are neither defamatory nor do they contain any defamatory implication, and that they are, in any event, subject to a qualified privilege. (*See generally* Mem. Supp. Def.'s Mot. Dismiss, Nov. 19, 2021 [ECF No. 6] (hereinafter "Mem. in Supp.").) The matter was fully briefed by the parties, who asked the court to resolve the motion without a hearing. (*See* ECF No. 14.) Accordingly, the motion to dismiss is ripe for disposition.

## II.

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "naked assertion[s] devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557).

### III.

In Virginia, claims of defamation involve three elements: "(1) publication of (2) an actionable statement with (3) the requisite intent."[2] *Tharpe v. Saunders*, 737 S.E.2d 890, 892 (Va. 2013). "An actionable statement is both false and defamatory." *Schaecher v. Bouffault*, 772 S.E.2d 589, 594 (Va. 2015) (internal quotation marks omitted). "Defamatory words are those 'tend[ing] so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" *Id.* (quoting Restatement (Second) of Torts § 559 (Am. L. Inst. 1977)). "A false statement must have the requisite defamatory 'sting' to one's reputation." *Id.* "Characterizing the level of harm to one's reputation required for defamatory 'sting,'" the Supreme Court of Virginia has "stated that defamatory language 'tends to injure one's reputation in the common estimation of mankind, to throw contumely, shame, or disgrace upon him, or which tends to hold him up to scorn, ridicule, or contempt, or which is calculated to render him infamous, odious, or ridiculous.'" *Id.* (quoting *Moss v. Harwood*, 46 S.E. 385, 387 (Va. 1904)). Additionally, "[a] defamatory statement may be made 'by inference, implication or insinuation.'" *Fuste v. Riverside Healthcare Ass'n, Inc.*, 575 S.E.2d 858, 861 (Va. 2003) (quoting *Carwile v. Richmond Newspapers, Inc.*, 82 S.E.2d 588, 592 (Va. 1954)). And "[a]t common law, defamatory words that 'prejudice [a]

---

[2] "The requisite intent a plaintiff must prove in a defamation action depends upon the plaintiff's status as a public or private figure and the damages sought." *Jordan v. Kollman*, 612 S.E.2d 203, 207 (Va. 2005). "The requisite intent for defamation involving a private person [like Plaintiff] is essentially negligence—that the defendant 'either knew [the statement] to be false, or believing it to be true, lacked reasonable grounds for such belief, or acted negligently in failing to ascertain the facts on which the publication was based.'" *Ransome v. O'Bier*, No. , 2017 WL 1437100, at *4 (E.D. Va. Apr. 20, 2017) (quoting *Gazette, Inc. v. Harris*, 325 S.E.2d 713, 725 (Va. 1985)). "To recover punitive damages, all defamation plaintiffs must show actual malice." *Jordan*, 612 S.E.2d at 207. "In order to establish actual malice, a plaintiff 'must demonstrate by clear and convincing evidence that the defendant realized that his statement was false or that he subjectively entertained serious doubt as to the truth of his statement.'" *Jackson v. Hartig*, 645 S.E.2d 303, 308 (Va. 2007) (quoting *Jordan*, 612 S.E.2d at 207).

person in his or her profession or trade' are actionable as defamation *per se*." *Id.* (quoting *Carwile*, 82 S.E.2d at 591).

Doe points to three specific statements that he contends were defamatory. First, he alleges that Dean Abraham's statement that she denied his appeal on the basis "that '[r]eading for accuracy in a clinical environment is required for patient safety'" was defamatory. (Compl. ¶ 83 (alteration original).) Second, he contends that Provost Bloss's statement that "ongoing concerns regarding safety and critical decision making that were raised in [Doe's] final OSCE attempt" led to Doe's dismissal were defamatory. (*Id.* ¶ 86.) And finally, Doe claims that President Fitzsimmons defamed him when she wrote that his "dismissal was due *solely* to concerns for patient safety." (*Id.* ¶ 90.)

The University offers three arguments in support of its motion. The first two assert that Doe has failed to plead defamation because the challenged statements were not published and were not defamatory. The third is that the statements are entitled to qualified privilege such that they cannot sustain claims of defamation.

**A.**

For its first argument, the University claims that the statements were never published. This argument fails. Doe alleges that Dean Abraham, Provost Bloss, and President Fitzsimmons shared their statements with other University employees. (Compl. ¶¶ 84, 89, 91.) This sharing satisfies Virginia's defamation publication requirement, regardless of whether the sharing is entitled to qualified privilege (as the University contends). *See Kuley v. Fayez*, No. CL-2014-1087, 2014 WL 10190138 at *5 (Va. Cir. Ct. Oct. 23, 2014) ("[I]f allegedly defamatory statements are communicated only to people within an organization with a duty to handle such

information, publication is established, but established in such a way to trigger qualified privilege."). Accordingly, at this stage and based on a plain reading of his allegations, Doe has adequately alleged the publication element of his defamation claims.

**B.**

Second, the University argues that the statements were not defamatory and did not contain a defamatory implication. The court disagrees.

As noted above, "[a]n actionable statement is both false and defamatory." *Schaecher*, 772 S.E.2d at 594. "Defamatory words are those 'tend[ing] so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" *Id.* (alteration original) (quoting Restatement (Second) of Torts § 559). "A false statement must have the requisite defamatory 'sting' to one's reputation." *Id.*

The three statements at issue, all made in the context of Doe's appeal of his dismissal, are: Dean Abraham's statement that "[r]eading for accuracy in a clinical environment is required for patient safety," followed by her denial of Doe's appeal (Compl. ¶ 83 (alteration original)); Provost Bloss's statement that she "cannot overlook the ongoing concerns regarding safety and critical decision making that were raised in your final OSCE attempt" (*id.* ¶ 86); and President Fitzsimmons's statement that Doe's dismissal "was due *solely* to concerns for patient safety" (*id.* ¶ 90 (emphasis original)). Read in context—and mindful that a defamatory statement may be made "by inference, implication or insinuation." *Carwile*, 82 S.E.2d at 592—the court concludes that each statement, as alleged, can sustain claims of defamation and defamation *per se*.

Doe correctly points to *Fuste v. Riverside Healthcare Ass'n, Inc.*, 575 S.E. 2d 858 (Va. 2003), a case in which similar statements were held to be provably false *and* to contain the necessary "sting" of defamation. In that case the plaintiffs, Dr. Rosa Fuste and Dr. Tien L. Vanden Hoek, quit their jobs following a dispute with their employer, defendant Riverside Healthcare Association ("RHA"). 575 S.E.2d at 860. After they left, they alleged that RHA "defamed them in order to harm [their] new medical practice." *Id.* Specifically, they alleged that agents of RHA "informed patients, agents of other hospitals, and credentialing officials . . . that Drs. Fuste and Vanden Hoek were 'unprofessional' and 'uncooperative,' that they had 'left suddenly' and 'abandoned their patients,' and that there were 'concerns about their competence.'" *Id.* On appeal, the Virginia Supreme Court held that "the alleged statements that Drs. Fuste and Vanden Hoek 'abandoned' their patients and that there were 'concerns about their competence' not only prejudice the doctors in the practice of their profession, but also contain 'a provably false connotation.'" *Id.* at 861–62 (cleaned up).

Stated differently, the Virginia court reasoned that whether RHA terminated Drs. Fuste and Vanden Hoek due to concerns about their competence was "capable of being proven true or false. For example, evidence could be presented to show whether there were, in fact, concerns about the plaintiffs' competence." *Id.* at 862. In this case, Doe alleges that Dean Abraham implied that he lacked skills related to reading for accuracy, Provost Bloss stated that there were "ongoing concerns regarding safety and critical decision making," and that President Fitzsimmons said his dismissal was "*solely* due to concerns for patient safety." (Compl. ¶¶ 83, 86, 90.) Like the statements in *Fuste*, these statements reasonably imply that Doe is unfit in his chosen profession and may therefore form the basis of a cause of action

- 8 -

for defamation and defamation *per se*. *See Fuste*, 575 S.E.2d at 861–62; *Baylor v. Comprehensive Pain Mgmt. Cntrs., Inc.*, No. 7:09cv00472, 2011 WL 1327396, at *10–11 (W.D. Va. Apr. 6, 2011) (holding that statements that a physician was terminated "for ethical reasons" could be actionable as defamation). Accordingly, Doe has adequately alleged statements that, if uttered, could be proven false and might contain the necessary "sting" required to make out claims for defamation and defamation *per se*.

## C.

Third, the University argues that the challenged statements are subject to a qualified privilege. "[I]t is well settled under Virginia law that '[c]ommunications between persons on a subject in which the persons have an interest or duty are occasions of privilege' . . . ." *Echtenkamp v. Loudon Cnty. Pub. Schools*, 263 F. Supp. 2d 1043, 1061 (E.D. Va. 2003) (quoting *Larimore v. Blaylock*, 528 S.E.2d 119, 121 (Va. 2000)).

> Generally defamatory publications *prima facie* imply malice in the author, and proof of malice is not required of the complaining party beyond proof of the publication itself. But privileged communications are an exception to the rule, and if a communication is one of qualified privilege the onus is cast upon the person claiming to have been defamed to prove the existence of malice. Where such proof is offered, it is a question for the jury to decide. But if the plaintiff offers no evidence to prove actual malice on the part of defendant his action must fail.

*Story v. Norfolk-Portsmouth Newspapers, Inc.*, 118 S.E.2d 668, 670 (Va. 1961). "In order to establish actual malice, a plaintiff 'must demonstrate by clear and convincing evidence that the defendant realized that his statement was false or that he subjectively entertained serious doubt as to the truth of his statement.'" *Jackson*, 645 S.E.2d at 308 (quoting *Jordan*, 612 S.E.2d at 207).

In other words, *if* a defendant establishes the qualified privilege applies, the burden is on the plaintiff to establish actual malice to defeat the invocation of that privilege.

The University contends the statements in question were privileged because they were published "only [to] individuals within the University who would necessarily be a part of" the appeals process for Doe's dismissal. (Mem. in Supp. pg. 3.) That argument, however, relies on facts that are not alleged in Doe's complaint. Although Doe alleges that the statements were shared with "Defendant employees," including Provost Bloss's administrative assistant and the University registrar, he never suggests that all of these individuals were "necessarily" a part of the appeals process, nor does he allege that they were the *only* employees to whom the statements were disseminated. (*See* Compl. ¶¶ 84, 91 (alleging that these two statements were published to "Defendant employees" "*including*" the provost's assistant and the University registrar, not *exclusively* them).) The court cannot conclude, at this stage, that all communication of the allegedly defamatory statements was among "persons [who] have an interest or duty" related to Doe's appeal. *Cashion*, 749 S.E.2d at 532.

Additionally, the qualified privilege the University invokes can be defeated by a showing "that the privilege has been lost or abused, which must be shown by clear and convincing proof." *Id.* (citing *Preston v. Land*, 255 S.E.2d 509, 511 (Va. 1979); *Gov't Micro Res., Inc. v. Jackson*, 624 S.E.2d 63, 71 (Va. 2006)). The privilege is lost or abused if the speaker acts with malice, and can be shown by evidence that, among other things, "the statements were made with knowledge that they were false or with reckless disregard for the truth." *Id.* at 533 (citing *Raytheon Tech. Servs. Co. v. Hyland*, 641 S.E.2d 84, 89–90 (Va. 2007)). Whether the

privilege is lost or abused is a question of fact. *Goulmamine v. CVS Pharmacy, Inc.*, 138 F.Supp.3d 652, 659 (W.D. Va. 2015) (citing *Cashion v. Smith*, 286 Va. 327, 337 (2013)).

Doe expressly alleges that alleged comments "were malicious, not made in good faith, and/or the result of ill will toward, personal spite against, and a desire to harm Doe including but not limited [to] discriminatory animus toward Doe's race and disability." (Compl. ¶ 152.) If Doe provides supporting evidence of this allegation after discovery, a jury could conclude that the qualified privilege arguably enjoyed by the University and its employees was lost. *See Alexandria Gazette Corp. v. West*, 93 S.E.2d 274, 279–80 (Va. 1956) ("[I]t is the court's duty to determine as a matter of law whether the occasion is privileged, while the question of whether or not the defendant was actuated by malice, and has abused the occasion and exceeded his privilege are questions of fact for the jury.") (cleaned up). It is therefore inappropriate for the court to consider the University's affirmative defense of qualified privilege at this early stage. *Cf. Givago Growth, LLC v. iTech AG, LLC*, 863 S.E.2d 684, 686–87 (Va. 2021) (finding that a trial court erred in sustaining a demurrer asserting an absolute privilege to a defamation charge because "affirmative defenses 'may not be raised in a demurrer, which tests only the facial validity of the allegations in a complaint rather than the validity of affirmative defenses'" (quoting *A.H. ex rel. C.H. v. Church of God in Christ, Inc.*, 831 S.E.2d 460, 479 n.23 (Va. 2019)).

## IV.

For all these reasons, Doe has adequately alleged that University officials made and published statements that may be provably false and that contain the requisite "sting" of defamation. The University's motion to dismiss will be denied.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 7th day of July, 2022.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE